GEORGE TRIMBO *vs.* MICHAEL TRIMBO.

November 25, 1891.

Setting Aside Deed—Weakness of Intellect from Old Age.—In the absence of fraud or undue influence, mere weakness of intellect, resulting from old age or sickness, is no ground for setting aside an executed contract.

Same—Rule as to Capacity to Contract.—The rule as to the measure of mental capacity in such cases is simply that the contracting party must have enough to reasonably understand the nature and effect of what he is doing.

Same—Incapacity not Continuous—Burden of Proof.—Where the incapacity is not continuous, and the act is in itself reasonable and proper,

and hence furnishes no intrinsic evidence of mental incapacity, the burden is on the party assailing the act to show the incapacity at the time it was done.

Action to set aside a deed, brought in the district court for Sibley county, and tried by *Edson, J.,* who ordered judgment for plaintiff. A motion for a new trial was denied by *Severance, J.,* and the defendant appealed.

*W. H. Leeman,* for appellant.

*H. J. Peck,* for respondent.

MITCHELL, J.    One Jacob Trimbo, the father of these parties, owned a farm of 266 acres, upon which he resided until his decease, the 80 acres upon which the dwelling-house was situated being his homestead.    Having been taken quite ill in November, 1885, he made a will; but shortly afterwards, having concluded that it was better to divide his property among his children during his lifetime, so as to save the cost and trouble of administration, he destroyed the will, and about December 1st executed two deeds, (his wife, Ellen, joining,) one to defendant, conveying 160 acres of the land, including the homestead 80, and the other to another son, Henry, conveying the balance of the farm.    Each of these deeds was subject to the payment by the grantee, to other children of the grantors, of certain sums of money, which were made specific liens on the land.    As part of the same transaction, the grantees executed a joint agreement, in consideration of these conveyances, to provide suitable support to the grantors during their natural lives.    This agreement they have fully performed.    Jacob Trimbo died in January, 1886, and his wife in August, 1888.    There is no claim here of any fraud or undue influence.    So far as appears, the execution of these deeds, which disposed of the land in the same way as the will had done, was wholly the voluntary and unsolicited act of the old man, the reason assigned by him for disposing of his farm in this way being that these two sons, especially Michael, "had stayed at home all the time;" evidently meaning that they had remained and helped him on the farm, while the others had gone out for themselves.    The plaintiff, as one of the heirs-at-law, brought actions against this defendant and his brother Henry, to have these deeds set aside on the ground of the

mental incapacity of both the grantors. The trial court found that Jacob Trimbo was of sound mind, but that Ellen, his wife, was mentally incapable of executing the deeds; and, as conclusions of law, held that the deed to defendant, so far as it attempted to convey the homestead 80, was wholly void, and as to the other 80 was void as to one undivided third part.

If the finding of fact as to the mental incapacity of the wife was warranted by the evidence, the somewhat novel state of facts might present some interesting legal questions. But a perusal of the evidence satisfies us that it did not justify the finding. As has been already remarked, there is no element of fraud, overreaching, or undue influence in the case. Neither is there anything tending to show that the disposition of the property made by these conveyances was not a reasonable, natural, and proper one to be made. The ground of attack on the deed is purely and solely the mental incapacity of the wife to execute a deed at all.

There is nothing better settled in the law than that, in the absence of fraud or undue influence, (which, when present, introduce other principles of decision,) mere weakness of intellect, resulting from sickness or old age, is no ground for setting aside an executed contract, provided the contracting party was capable of understanding, in a reasonable manner, the nature of the particular affair in which he participated. The rule as to the measure of the grantor's capacity in such a case is simply that he must have enough to understand in a reasonable manner the nature and effect of what he is doing. Moreover, the burden of proof is upon the party assailing the act to show the incapacity at the time it was done. The evidence of incapacity proffered must relate to the time of the *factum*, either directly or when taken in connection with other evidence in the case. In other words, when the incapacity is not continuous, and the act is reasonable and proper in itself, and hence not furnishing any intrinsic evidence of incapacity, the burden is on the party assailing the contract to show the incapacity at the time it was executed.

Tested by these rules, the evidence in this case is conspicuously feeble. There is nothing in it tending to prove insanity in the ordinary and popular sense. Taken at its strongest the most that could

be claimed for the evidence for the plaintiff is that it proved great mental and physical weakness resulting from old age and sickness, (Mrs. Trimbo was 67 or 68 years old, and had been stricken with paralysis;) that at times her mind was wandering, sometimes recognizing her acquaintances and sometimes not; sometimes talking with them, understanding them, and answering their questions, and sometimes not; and that she seemed like a child. When it is considered that none of the witnesses on part of the plaintiff were inmates of the house, but merely relatives and neighbors, who came there from time to time during Mrs. Trimbo's sickness, it is very easy to see how they might readily exaggerate the mental weakness of an old woman whose powers of locomotion and speech were seriously impaired by paralysis. But giving to this evidence its greatest possible effect, the most that can possibly be claimed for it is that it shows great feebleness of body and mind resulting from disease and age; and that there were frequent occasions when her mind was so wandering, or her intellectual faculties so dormant, that she would, at such times, be incapable of reasonably understanding any business affair. But it is very far short of proving that this condition was continuous, or that there were not frequent intervals when she would be perfectly capable of understanding the nature of a disposition of their property among her children. Such a disposition of property is in a sense testamentary in its nature, and the mental capacity of the party in such cases should be determined by substantially the same rules as would govern had the disposition been by will. The proper distribution of property among children is often a subject of parental consideration and discussion before old age arrives, the result of which may rest and remain in the mind and memory sufficiently to enable them to intelligently carry it into effect, even after mental weakness, caused by age or sickness, has rendered them incapable of intelligently understanding new business matters that may be brought to their attention. But if there could be any doubt as to the insufficiency of plaintiff's evidence, without anything to impeach it or break its force, it is entirely removed by certain undisputed facts appearing from the evidence on part of defendant. Sheridan, who drew the deeds and accompanying agreement, and

before whom they were executed, and who was a disinterested witness, states that after the papers were read over to Mrs. Trimbo he asked her if she understood them, and that she replied that she did, and asked "if Michael [the defendant] got the homestead where the house was." It is true that one witness who was present on that occasion testified that he did not think that the deeds were read over to her, but the fact that she made the inquiry is not denied.   We think the significance of this inquiry is almost conclusive, for it shows that Mrs. Trimbo understood that the matter in hand was the conveyance of the land to the sons, but wanted to be sure that Michael was getting the homestead, —a disposition of it probably already familiar to her mind, and in accordance with a previously formed plan.   We also think that there is great persuasive force to the evidence of the unmarried daughter, who lived at home, and had charge of her mother and of household affairs during her mother's long illness.   Her description of her mother's mental moods, and of her habit of giving minute instructions to her daughter how to conduct the household work, which she was no longer physically able to perform herself, is utterly inconsistent with the idea that she had sunk into a condition of utter and continuous mental imbecility.

Order reversed.